**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

JERAN SORUM                                                        PETITIONER

v.                              NO. 4:20-cv-00547 KGB-PSH

DEXTER PAYNE                                                      RESPONDENT

FINDINGS AND RECOMMENDATION

INSTRUCTIONS

The following proposed Recommendation has been sent to United States District Judge Kristine G. Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

DISPOSITION

I. <u>STATE AND FEDERAL COURT PROCEDINGS</u>. The record reflects that petitioner Jeran Sorum ("Sorum") was convicted in Benton County Circuit Court of rape, sexual assault in the second degree, and computer exploitation of a child in the first degree. He appealed his convictions, but the Arkansas Court of Appeals found no reversible error and affirmed them. <u>See</u> <u>Sorum v. State</u>, 2017 Ark.App. 384, 526 S.W.3d 50 (2017).

Sorum then filed a petition for post-conviction relief pursuant to Arkansas Rule of Criminal Procedure 37 ("Rule 37"). The state trial court denied the petition, and Sorum appealed. The state Court of Appeals found no reversible error and affirmed the denial of his petition. <u>See</u> <u>Sorum v. State</u>, 2019 Ark.App. 354, 582 S.W.3d 18 (2019).

Sorum then began the case at bar by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. 2254. In the petition, he advanced the following three claims:

1) "Trial counsel failed to make an appropriate directed verdict motion to the charge of computer exploitation of a child. If he had done so, the trial court would have granted it because it would have been meritorious." <u>See</u> Docket Entry 1 at CM/ECF 7.

2) "Trial counsel failed with respect to accomplice corroboration by not moving for a directed verdict due to lack of corroboration, and, if that failed, then by failing to argue it to the jury with appropriate jury instructions." <u>See</u> Docket Entry 1 at CM/ECF 14.

3) "The jury should have heard that K.G. [<u>i.e.</u>, the victim in this case] had sex with Isaac Postoak on the night of the alleged offense[s] …," <u>see</u> Docket Entry 1 at CM/ECF 17, and trial counsel should have moved to introduce the evidence.

Payne filed a response to the petition and asked that the petition be dismissed. With respect to Sorum's first claim, Payne maintained that the claim was reasonably adjudicated by the state Court of Appeals and the adjudication should be accorded deference. With respect to Sorum's second and third claims, Payne maintained that the claims are procedurally barred from federal court review.

Sorum thereafter filed a reply. In it, he maintained that the state Court of Appeals did not reasonably adjudicate his first claim, and the adjudication should be accorded no deference. With respect to his second and third claims, he maintained that they are not procedurally barred from federal court review and should be addressed in this proceeding.[1]

---

[1]     At the behest of the undersigned, Payne filed a supplement brief.

II. <u>SORUM'S FIRST CLAIM</u>. The computer exploitation of a child offense was charged pursuant to <u>Ark</u>. <u>Code</u> <u>Ann</u>. 5-27-605, <u>see</u> Docket Entry 8, Exhibit B at CM/ECF 13, a statute found in Subchapter Six, or in the "Computer Crimes Against Minors" section, of the Arkansas Offenses Against Children or Incompetents. The charge required the State to prove that Sorum caused or permitted a child to engage in "sexually explicit conduct" and knew, had reason to know, or intended that the conduct may be filmed. <u>Ark</u>. <u>Code</u> <u>Ann</u>. 5-27-601(15)(B) defines "sexually explicit conduct" to include "deviate sexual activity," actual or simulated. <u>Ark</u>. <u>Code</u> <u>Ann</u>. 5-27-601(7)(B) defines "deviate sexual activity" to include any act involving the penetration, however slight, of the labia majora or anus of a person by a foreign instrument manipulated by another person.

Sorum maintains that his trial attorney erred when counsel did not make a proper directed verdict motion to the charge of computer exploitation of a child at the close of the State's case-in-chief. Sorum maintains that the motion would have been granted had it been based on either of the following grounds: 1) the State failed to prove that Sorum engaged K.G. in "sexually explicit conduct," or 2) the State failed to prove that Sorum knew, had reason to know, or intended that the conduct may be filmed.

In affirming the denial of Sorum's Rule 37 petition, the state Court of Appeals summarized the evidence introduced during the State's case-in-chief. The summary is as follows:

> Sergeant Mike Lira with the Benton County Sheriff's Office testified that the child-abuse hotline received a report from the principal of the Siloam Springs High School about an incident that had occurred off campus involving a student. Lira arranged for a forensic interview of that student, K.G., at the Children's Advocacy Center. Lira said that K.G. disclosed that she had been sexually assaulted by Sorum. Lira's investigation revealed that on Friday, September 27, 2013, twenty to twenty-five people—mostly teenagers—attended a party at Thomas King's residence and that alcohol was served. The victim was said to have been "extremely intoxicated." While Lira was interviewing witnesses about the party, he learned that there was a video from the party. Lira obtained a search warrant for Sorum's cell phone. The video had been deleted, but a detective retrieved it using new technology. The video depicts Sorum and Andrew ("Drew") Wall in a room with K.G. passed out on a mattress. Lira testified to what he thought he heard being said on the video. He attributes the following statements to Sorum:
>
> 1. "Wake up. Get in that ass. Oh yeah."
>
> 2. "I want to fuck that again, Drew."
>
> 3. "Get in there, bitch. If you don't do it, you're the biggest pussy I ever met."
>
> 4. "Should we really put a condom on it and fuck her with it? You gotta hold her shorts."
>
> 5. "Help me. Put it on the broomstick. Do it now. Start with the condom. Use the condom now."

6. "Give me—give me the fucking condom. Are you going to put it on your dick or not?"

7. "Oh, you're not? See if, uh, hold this. Watch this. This is redneck fucking, dude. Fat bitches have done gone to bed."

Wall testified that he pleaded guilty to computer exploitation of a child in the second degree, and he admitted having told many inconsistent versions of the incident. Wall stated that he and Sorum were intoxicated but were aware that K.G. was "very high." Wall said that he and Sorum were "messing with some cats" in the hallway outside the bedroom where K.G. slept. Wall stated that, before going into the bedroom, Sorum had seen a broom and had said, "I'm gonna fuck with this broom." Wall used Sorum's cell phone as a flashlight. Wall stated that the cell phone's battery had died at some point, that he had handed the phone back to Sorum, and that he had gotten a flashlight from his truck and returned to the room. Wall stated that Sorum had put a condom on the broomstick, pulled down K.G.'s pants, and put the broomstick in her vagina. He said that, although she had been sleeping, K.G.'s eyes suddenly opened when the broomstick went inside her. Wall admitted sending the following message to K.G. on Saturday night, September 28, 2013, via Facebook: "Something happened to you that night." When K.G. asked what had happened, Wall wrote, "You got f'd with a broomstick."

Isaac Postoak testified that he pleaded guilty to computer exploitation of a minor. Postoak stated that he had attended King's party, but he denied being in the room with Sorum and Wall. He said that on the following day several friends from school were in his garage smoking K2, which he described as "artificial marijuana that you buy from a store," and talking about the party. Postoak testified that Sorum said that he "had fucked [K.G.] with a broomstick" and that everybody had thought it was a joke until Sorum played a video. Postoak recalled seeing Sorum "poking around at [K.G.]" and putting a condom on a broomstick.

K.G. testified that she was fifteen years old at the time of King's party. She said that she had consumed two or three beers and then switched to a "pretty big" bottle of Everclear that she shared with a friend. She and her friend were dancing inside, and they went outside where it was cooler. K.G. took off her shirt, under which she wore a sports bra. She then got on the ground and started throwing up repeatedly. She said she was dizzy, stumbling, and "wasn't really aware of what was going on." Her friends helped her inside, undressed her, and put her in the shower because she had thrown up on her clothes and had vomit in her hair. K.G.'s friends then dressed her in sweatpants and a sweater belonging to someone else and took her to a back bedroom where she lay down on a mattress and fell asleep. K.G. said she remembered waking up several times. The first time she awoke, she saw a bowl in front of her with vomit in it. The second time she awoke, Postoak had her hand down his pants, and she had pulled away. The third time she woke up, Manuel Crus had come into the room and was "asking me if I wanted to," to which she had yelled, "No!" She awoke again to find Sorum on top of her with her legs pinned between his, and she turned her head and saw a bright light. K.G. said that she was "pretty certain" Wall was holding a cell phone, which illuminated the room. K.G. said that she was certain that Sorum was on top of her. She said, "Since the flashlight was pointing towards our direction, it made Jeran a lot more clearer than anything else, his curly hair and all of his characteristics from his body." She also testified that she had known Sorum before that night. K.G. said that her sweatpants had been pulled down below her knees and that her vaginal area was "really wet." K.G. stated that, when she awoke the following day, "it really burned to pee." She said that she had suffered no pain while urinating before that night.

Three young men testified about the day after King's party when they were smoking K2 in Postoak's garage. Manuel Crus, who had attended King's party, recalled Sorum saying, "Remember last night? We were all drinking. We were all messed up. I have this video." Crus testified that, while watching the video, "[t]he words out of Jeran's mouth were that he fucked [K.G.]

with a broomstick. No mistake about that. I remember it clearly." Brenden Hyde testified that Sorum was "excited" about showing them the video and said that he had "screwed" or "fucked" a girl with a broomstick. Jeremiah Knifechief testified that Sorum had pulled out his cell phone, showed them a video, and said something to the effect of "screwing a girl with a broomstick."

See Sorum v. State, 526 S.W.3d at 51-53.

After the State rested, Sorum moved for a directed verdict on, inter alia, the charge of computer exploitation of a child. See Docket Entry 8, Exhibit B at CM/ECF 837-845. Trial counsel focused much of his argument on the video recording, noting that it did not show Sorum using a foreign instrument to actually penetrate K.G.'s labia majora or anus. The State's response was not a model of clarity as it appeared to center on the requirement of only showing simulated "deviate sexual activity." It was the State's contention that the recording showed Sorum simulating penetration of K.G.'s vagina and anus with a broomstick. The state trial court denied the motion.

Sorum then took the stand in his own defense. The defense rested following his testimony, and the State offered rebuttal testimony. The state Court of Appeals summarized Sorum's testimony and the rebuttal testimony as follows:

… [Sorum] testified that he was seventeen years old at the time of King's party. He stated that he and others had been videotaping and taking pictures during the party. Sorum testified that he and Wall were intoxicated, that they had wandered into a bedroom, and that Wall had his (Sorum's) cell phone. Sorum said that he first realized K.G. was in the room and passed out when he saw her from the cell phone's light. Sorum said that Wall was recording when they entered the room. He stated that he and Wall were "just kinda goofing around" and "drunkenly exploring." Sorum said that he had taken a kitten and had thrown it on K.G. According to Sorum, K.G. was wearing sweatpants and a sweater and was under a blanket. He testified that Wall had handed him a broom for some reason and that he had begun swinging it around and had hit Wall with it. Sorum recalled that he and Wall had made a lot of noise in their attempts to wake K.G. and that he had eventually begun "prodding" her with the broomstick. He admitted touching her "thigh region." Sorum described K.G. as a friend from school and said that when friends pass out at parties, they "get messed with." He testified that Wall had produced a condom, opened the wrapper, and handed the condom to him. Sorum said that "[w]e did not have any plan that was sexual at all." Sorum said that he had unrolled the condom onto the broomstick, swung it around a few more times, "sort of danced around the room a little more," and then left the room. Sorum said that he left the party soon after that. He said that the following morning, Wall and a female returned his phone and that he had not even realized that he had forgotten it at the party.

Sorum was asked about the voices on the video. He said, "I have no clue what I meant by 'Get in that ass.' I have no clue if I even said that. I did not hear it." He did not recall saying any of the things on the video testified to by Lira. He said that he did not recall the "redneck fucking" comment but said, "I did hear that. I did hear something along the lines of that. I did hear that. More like what was said was probably like this is redneck shit. The room is redneck. It was trashy redneck. I didn't hear 'This is redneck fucking, dude.' I did not hear that."

Sorum further testified that everyone was smoking K2 in Postoak's garage the following day and talking about how crazy the party had gotten. Sorum started "going through" his cell phone and realized for the first time that there was a video. Sorum said that he had told the other boys, "Let's watch this." He denied saying that he had "fucked," "f'd," or "screwed" a girl with a broomstick. When asked why his good friends would say otherwise, he said that they were either mistaken or lying and maybe trying "to save their own ass." Sorum said that the video was dark and of "crappy quality" and that no one had been excited about watching the video. He said that he had immediately deleted it because they "couldn't see anything really."

Sorum testified that he first began to hear rumors about King's party on Monday, September 30, 2013, at school. On cross-examination, Sorum was shown Facebook messages between him and K.G. The following messages were sent Sunday, September 29:

> K.G.: wtf [what the fuck] jeran I herd wtf u did

> Sorum: wtf did I do

> K.G.: nvm [never mind] its drew talking shit he's saying u fucked me with a broom

> Sorum: Ok well tell drew to stfu [shut the fuck up]

Confronted with the Facebook messages, Sorum conceded that he was aware of the "rumors" before Monday. Sorum denied having conversations with Wall and Postoak about what they needed to say to the cops.

Wall was recalled to the stand. He testified that Sorum had come to his house, had asked him not to cooperate with the police, and had said that they needed to come up with a story together. Postoak was also recalled to the stand. He testified that Sorum had come to speak with him a couple of times about

> "trying to get together and avoid getting caught up in this mess." Postoak said that Sorum had told him that they should come up with a plan and have the same story "so that this would blow over" and that if he "came up with a lie good enough that we could get out of it."

See Sorum v. State, 526 S.W.3d at 51–54.

On appeal, Sorum challenged the sufficiency of the evidence supporting his conviction for computer exploitation of a child. The state Court of Appeals rejected the challenge.[2]

In Sorum's Rule 37 petition, he challenged counsel's failure to make a proper directed verdict motion to the charge of computer exploitation of a child. The state Court of Appeals applied Strickland v. Washington, 466 U.S. 668 (1984), and rejected the challenge, finding the following:

---

[2] On appeal, Sorum changed the basis of his challenge to his conviction of computer exploitation of a child. He no longer relied upon the definitions found in Ark. Code Ann. 5-27-605 but instead relied upon the definitions found in Ark. Code Ann. 5-27-302, a statute found in Subchapter Three, or the "Sexual Exploitation of Children Generally" section, of the Arkansas Offenses Against Children or Incompetents. Sorum maintained that there was no evidence of "sexually explicit conduct" as defined in 5-27-302 because there was no evidence of actual or simulated sexual intercourse, bestiality, masturbation, sadomasochistic abuse for the purpose of sexual stimulation, or lewd exhibition of the genitals or pubic area of any person or the breast of a female. The state Court of Appeals observed that although there are similarities in the definitions found in 5-27-605 and 5-27-302, the former was the relevant statute. 5-27-605 defines "sexually explicit conduct" to include simulated "deviate sexual conduct," a phrase not found in 5-27-302. The court nevertheless declined to address the challenge because it was raised for the first time on appeal. Sorum also maintained that there was no evidence that he knew, had reason to know, or intended the conduct may be filmed. The court declined to address that challenge because it too was raised for the first time on appeal.

According to [Sorum], had counsel made a more specific motion for directed verdict regarding "sexually explicit conduct" as defined by subchapter 6—that the video did not depict conduct involving sexual intercourse, deviate sexual activity, bestiality, masturbation, lewd exhibition of genitals, sadomasochistic abuse, or simulated sexually explicit conduct—"the trial court would have been obligated to dismiss the charge and the outcome would have been different." Sorum's argument fails.

To prevail on a claim of ineffective assistance of counsel based on counsel's failure to preserve an issue for appeal, a petitioner must show that had the issue been preserved, the appellate court would have reached a different decision. … In the instant case, therefore, Sorum must demonstrate that the appellate court would have found that the evidence adduced at trial was insufficient to support a conviction and would have overturned his conviction for that reason. …

Here, the State presented evidence to support Sorum's conviction of computer exploitation of a child including video showing the broomstick touching K.G. and Detective Lira's testimony that the video showed the broomstick "going in the vaginal area, as well as the anal area" over K.G.'s clothes. Moreover, Sorum testified that he prodded K.G. with the broomstick around her thigh area. It was the duty of the jury to view the video and determine if actual or simulated penetration of K.G.'s vagina or anus occurred. Though Sorum asserts that the video does not show any penetration or simulated penetration, it is the jury's duty to weigh the evidence and resolve contradictions and conflicts in testimony; in doing so, the jury may accept testimony it believes to be true and disregard testimony it believes is false. … Viewing the evidence in the light most favorable to the State, we hold that the evidence is sufficient to support a conviction, and counsel was not ineffective for failing to preserve the sufficiency-of-the-evidence issue for appeal.

> Furthermore, the State presented evidence that Sorum had reason to know that the cell phone may have been recording video of his actions against K.G. Sorum testified that when he and Wall entered the room where K.G. was sleeping, "yes, we were recording, I think. About the time we walked into the door we were probably recording." Because the State presented some evidence to support its contention that Sorum knew or had reason to know the cell phone may have been recording, trial counsel was not ineffective for failing to move for a directed verdict on the offense of computer exploitation of a child on these grounds.

See Sorum v. State, 582 S.W.3d at 24-26.

A challenge to counsel's representation is governed by Strickland v. Washington, which requires a two-part showing. It requires the petitioner to show that counsel's performance was deficient and, if so, that the petitioner was prejudiced by the inadequate representation. See Stephens v. Smith, 963 F.3d 795 (8th Cir. 2020). Counsel is strongly presumed to have rendered adequate assistance. See Burt v. Titlow, 571 U.S. 12 (2013).

If the challenge is adjudicated on the merits by the state courts, the adjudication is also accorded deference, save two instances. First, the adjudication is accorded no deference if it resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court. See 28 U.S.C. 2254(d)(1). The scope of 28 U.S.C. 2254(d)(1) is as follows:

> ... A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." Bell v. Cone, 535 U.S. 685, 694 ... (2002). "The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle ... but unreasonably applies it to the facts of the particular case." Id. A court "may not grant relief simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly," rather the application "must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 411 ... (2000). ...

See White v. Kelley, 824 F.3d 753, 757 (8th Cir. 2016). The petitioner must show far more than the adjudication was wrong or clear error; he must show that it is "so obviously wrong that its error lies beyond any possibility for fairminded disagreement." See Shinn v. Kayer, 2020 WL 7327827, 3 (U.S.S.Ct. December 14, 2020) [quotations and citation omitted].

Second, the adjudication is not accorded deference if it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. 2254(d)(2). An unreasonable determination of the facts occurs only if it is shown by "clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." See White v. Dingle, 757 F.3d at 755-756 [quotations and citations omitted].

If 28 U.S.C. 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied the deferential standard of Strickland v. Washington. See Stephens v. Smith, supra. Together, Strickland v. Washington and 28 U.S.C. 2254(d) create a doubly deferential standard of review. See Williams v. Roper, 695 F.3d 825 (8th Cir. 2012).

Sorum maintains that 28 U.S.C. 2254(d) is inapplicable for two reasons. First, the adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court in United States v. Williams, 553 U.S. 285 (2008). Second, the adjudication resulted in a decision that was based on an unreasonable determination of the facts. Sorum maintains that the State failed to offer any evidence as of the close of its case-in-chief that he engaged K.G. in "sexually explicit conduct" or that he knew, had reason to know, or intended the conduct may be filmed.

The state Court of Appeals addressed Sorum's claim on the merits. Although the court gave an alternate construction to a portion of the claim, understanding him to also challenge counsel's failure to preserve an issue for appeal, the court's adjudication of the claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court.

15

The state Court of Appeals reasonably applied <u>Strickland v. Washington</u> in reviewing Sorum's challenge to counsel's representation. In doing so, the court addressed whether the State had met its burden of proof on the charge of computer exploitation of a child. The court reviewed the evidence favorable to the State and found that the evidence warranted submitting the charge to the jury. The court could reasonably find that a challenge to the sufficiency of the evidence warranted no relief. Although the court neither cited nor applied any other Supreme Court precedent in adjudicating the claim, none was required as the "general standard" of <u>Strickland v. Washington</u> was sufficient. <u>See</u> <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009).

Sorum maintains that the state Court of Appeals' adjudication is contrary to <u>United States v. Williams</u>. He cites the case for the proposition that "simulated sexual intercourse is not sexual intercourse that is merely suggested, but rather sexual intercourse that is explicitly portrayed, even though … it may not actually have occurred." <u>See</u> Docket Entry 1 at CM/ECF 11. <u>United States v. Williams</u>, though, is a factually dissimilar case and is inapplicable. Here, the charge was submitted to the jury on "deviate sexual activity," <u>see</u> Docket Entry 8, Exhibit B at 964-965, not sexual intercourse.

Sorum challenges the facts the state Court of Appeals relied upon in adjudicating the claim, noting that the court relied on facts offered after the close of the State's case-in-chief.[3] Although the court did so in part, its adjudication did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.

The undersigned will not re-weigh the evidence relevant to the charge of computer exploitation of a child. The undersigned simply notes that the state Court of Appeals' factual determinations were not unreasonable. In resolving the claim, the court could and did rely upon the video recording itself and the testimony of Detective Mike Lira ("Lira"), both of which were offered during the State's case-in-chief. The evidence was buttressed by other testimony during that portion of the trial, including that of Drew Wall ("Wall"), who testified that he saw Sorum assault K.G. and admitted telling a police officer the incident was being filmed. See Docket Entry 8, Exhibit B at CM/ECF 771-772, 777. In short, Sorum has not shown by clear and convincing evidence that the court's presumptively correct factual findings do not enjoy support in the record.

---

[3]    Sorum limits his claim to the evidence offered by the State during its case-in-chief. In light of the fact that he presented a defense after the denial of his motion for directed verdict at the close of the State's case-in-chief, he likely waived any right to challenge the evidence as of that point in the trial. See Rudd v. State, 308 Ark. 401, 825 S.W.2d 565 (1992).

Sorum maintains that the video recording contains no evidence of "sexually explicit conduct" as defined in <u>Ark</u>. <u>Code</u> <u>Ann</u>. 5-27-601 as there is no evidence of sexual intercourse, bestiality, masturbation, sadomasochistic abuse for the purpose of sexual stimulation, or lewd exhibition of the genitals or pubic area of any person or the breast of a female. <u>See</u> Docket Entry 1 at CM/ECF 8; Docket Entry 14 at CM/ECF 23. His recital of 5-27-601, though, is misplaced. The definition of "sexually explicit conduct" found in 5-27-601 also includes the phrase "deviate sexual activity," <u>see</u> <u>Ark</u>. <u>Code</u> <u>Ann</u>. 5-27-601(15), and he was charged with engaging in such activity.

In conclusion, this case is not an instance in which the state Court of Appeals applied a rule different from the governing law, decided the case differently than the Supreme Court has done on a set of materially indistinguishable facts, or correctly identified the governing law but unreasonably applied it to the facts. This case is also not an instance in which the state Court of Appeals' adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. The undersigned defers to the adjudication of the claim made by the state Court of Appeals and finds that the claim warrants no relief.

III. SORUM'S SECOND AND THIRD CLAIMS. Sorum's second and third claims are also challenges to counsel's representation. As Sorum's second claim, he maintains that counsel failed to challenge the lack of evidence corroborating Wall's testimony, whom Sorum believes to have been an accomplice. As Sorum's third claim, he maintains that the jury should have heard that K.G. had sex with Isaac Postoak ("Postoak") on the night of the incident, and trial counsel should have moved to introduce the evidence.

Sorum's second and third claims are likely procedurally barred from federal court review.[4] Rather than definitively determine whether they are indeed procedurally barred, the undersigned will bypass the question and address the claims because it is clear they warrant no relief. See Barrett v. Acevedo, 169 F.3d 1155 (8th Cir. 1999) (although procedural bar issue should ordinarily be resolved first, judicial economy sometimes dictates reaching merits if they are easily resolved). As the Court of Appeals observed in Chambers v. Bowersox, 157 F.3d 560, 564 n.4 (8th Cir. 1998), "the simplest way to decide a case is often the best."

---

[4]    Here, Sorum did not present claims two and three in his initial Rule 37 petition but instead first presented them in a proposed amended petition filed the same day as his initial Rule 37 petition. Although the state trial court could have granted leave to amend and considered the claims, it declined to grant leave to amend. The state Court of Appeals found on appeal that the state trial court did not abuse its discretion in denying leave to amend. A procedural default therefore likely occurred, and it appears unlikely that he could satisfy the strict cause and prejudice or actual innocence standards.

Like Sorum's first claim, claims two and three are governed by Strickland v. Washington. He must first show that counsel's performance was deficient and, if so, that prejudice occurred as a result of the inadequate representation.

A. Sorum's second claim. Sorum was charged with rape in violation of Ark. Code Ann. 5-14-103. See Docket Entry 8, Exhibit B at CM/ECF 12. The charge required the State to prove, inter alia, that Sorum engaged in "deviate sexual activity" with K.G. In the context of that charge, "deviate sexual activity" is defined as "[t]he penetration, however slight, of the labia majora or anus of a person by any body member or foreign instrument manipulated by another person. See Ark. Code Ann. 5-14-101(1)(B).

Ark. Code Ann. 16-89-111(e)(1)(A) provides, in part, that a conviction "may not be had in any case of felony upon the testimony of an accomplice … unless corroborated by other evidence tending to connect the defendant … with the commission of the offense." The corroboration is not sufficient if it "merely shows that the offense was committed and the circumstances of the offense." See Ark. Code Ann. 16-89-111(e)(1)(B). In Willis v. State, 2018 Ark.App. 199, 546 S.W.3d 550, 552 (2018), the state Court of Appeals provided the following explanation of the degree of corroboration required to support accomplice testimony:

> The test for corroborating evidence is whether, if the testimony of the accomplice were totally eliminated from the case, the other evidence independently establishes the crime and tends to connect the accused with its commission. … The corroborating evidence may be circumstantial so long as it is substantial; evidence that merely raises a suspicion of guilt is insufficient to corroborate an accomplice's testimony. … The presence of an accused in proximity of a crime, opportunity, and association with a person involved in the crime are relevant facts in determining the connection of an accomplice with the crime. … Corroborating evidence need not, however, be so substantial in and of itself to sustain a conviction. … Rather, it need only, independently of the testimony of the accomplice, tend in some degree to connect the defendant with the commission of the crime. …

In addition, as Payne correctly notes, "a defendant's own statement connecting him to the crime is sufficient to corroborate accomplice testimony." See Docket Entry 8 at CM/ECF 42 [citing Chavez v. State, 2018 Ark. 527, 564 S.W.3d 268 (2018)].

Sorum maintains that Wall was an accomplice whose testimony was not corroborated, noting that "[a]t the end of the trial, the only evidence that … Sorum penetrated K.G. was from … Wall's testimony." See Docket Entry 1 at CM/ECF 14. Sorum maintains that counsel erred when he failed to move for a directed verdict on the element of penetration because Wall's testimony was not corroborated and, if the motion were unsuccessful, argued to the jury.

Wall testified that he was with Sorum when they found K.G. sleeping alone in a bedroom, she having consumed too much alcohol. <u>See</u> Docket Entry 8, Exhibit B at CM/ECF 771-772, 775. Wall testified that he saw Sorum place a condom on a broomstick, pull down K.G.'s pants, and "put it in her." <u>See</u> Docket Entry 8, Exhibit B at CM/ECF 771-772.

For purposes of this Recommendation, the undersigned assumes that Wall was an accomplice whose testimony required corroboration. Applying the deferential standard of <u>Strickland v. Washington</u>, the undersigned is not persuaded that counsel's performance was deficient or, alternatively, that prejudice occurred as a result of counsel's performance.

The undersigned so finds because the State offered ample evidence during its case-in-chief to corroborate Wall's testimony. The video recording depicts Sorum and Wall in a bedroom with K.G. Sorum and Wall's conversation during a portion of the incident was captured on the recording, and Lira attributed to Sorum such statements as:

"I want to fuck that again, Drew."

"Should we really put a condom on it and fuck her with it? You gotta hold her shorts."

"Help me. Put it on the broomstick. Do it now. Start with the condom. Use the condom now."

See Docket Entry 8, Exhibit B at CM/ECF 608. Lira additionally testified that Sorum was captured in a still photograph from the recording holding a broomstick with a condom on it. See Docket Entry 8, Exhibit B at CM/ECF 584. Manuel Crus testified during the State's case-in-chief that Sorum told of having "fucked [K.G.] with a broomstick." See Docket Entry 8, Exhibit B at CM/ECF 665-666. Jeremiah Knifechief, Brenden Hyde, and Postoak also testified during the State's case-in-chief that Sorum made similar comments to them. See Docket Entry 8, Exhibit B at CM/ECF 732, 748-750, 818-819. Such evidence, independent of Wall's testimony, tends in some degree to connect Sorum to the commission of the rape.

B. Sorum's third claim. Prior to trial, Sorum's attorney filed a motion to present evidence under Arkansas Rule of Evidence 411 and Ark. Code Ann. 16-42-101. See Docket Entry 8, Exhibit B at CM/ECF 99-104. In the motion, counsel asked to introduce evidence of the following:

> … law enforcement collected several items of clothing and other physical evidence from the crime scene, which were sent to the Arkansas State Crime Laboratory for DNA analysis. When the reports from the crime lab came back, they indicated that two different sets of DNA, in particular stains made up of sperm cells, were found on the sweatshirt the alleged victim wore on the night in question. While one of those stains was compared and matched to a DNA sample[] provided by … Postoak, the second stain was compared to a sample that … Sorum provided, which excluded him from being a contributor. …

<u>See</u> Docket Entry 8, Exhibit B at CM/ECF 100. The State also filed motions in limine to exclude any reference to prior sexual contact between K.G. and Sorum and prior sexual contact between K.G. and Postoak. <u>See</u> Docket Entry 8, Exhibit B at CM/ECF 110-111, 112-113. The state trial court conducted a hearing on the issues, <u>see</u> Docket Entry 8, Exhibit B at CM/ECF 307-318, after which the court barred the introduction of the DNA evidence. In a written order, the state trial court provided the following reasons for doing so:

> Here, this Court finds that introduction of DNA evidence not belonging to [Sorum] found on sweatpants that do not belong to either the victim or [Sorum] is not relevant to prove consent. Furthermore, this Court finds that not only would this evidence confuse the jury but it would embarrass the victim by requiring her to testify about her possible past sexual history or previous sexual acts in order to explain the origins of the irrelevant DNA evidence.
>
> …
>
> This Court concludes that the evidence [Sorum] is attempting to introduce clearly violates the Arkansas Rape Shield Statute. This evidence does not prove that the victim engaged in consensual activity with [Sorum] or another person nor is it proper to use in attacking her credibility. This Court holds that this evidence is being offered to prove the victim's prior sexual conduct with another person, and such evidence is not relevant to the charges the prosecution has brought against [Sorum]. …

<u>See</u> Docket Entry 8, Exhibit B at CM/ECF 105-106.

Sorum maintains that the jury should have heard that K.G. had sex with Postoak on the night of the incident and offers several reasons why the evidence was admissible. See Docket Entry 1 at CM/ECF 18-23; Docket Entry 14 at CM/ECF 15-20. Sorum maintains that trial counsel should have moved to introduce the evidence but failed to "conduct [a] rape shield hearing correctly and obtain a ruling …" See Docket Entry 1 at CM/ECF 22.

Applying the deferential standard of Strickland v. Washington, the undersigned is not persuaded that counsel's performance was deficient or, alternatively, that prejudice occurred as a result of counsel's performance. The undersigned so finds for the following reasons.

First, although the state trial court appears to have limited its ruling to the introduction of DNA evidence, it is extremely unlikely that the court would have allowed the introduction of evidence about the sexual contact between K.G. and Postoak. Any attempt to introduce that evidence would have undoubtedly been rejected.

Second, notwithstanding the foregoing, the evidence is of questionable relevance. As Payne correctly observes, whether K.G. and Postoak had sexual contact "does not make it more or less likely that Sorum sexually assaulted and raped K.G. with a broomstick …" See Docket Entry 8 at CM/ECF 43-44.

Last, given the evidence of Sorum's guilt, no prejudice occurred as a result of counsel's performance. As Payne correctly observes, "Sorum's argument does not demonstrate a reasonable probability that, but for the exclusion of evidence that K.G. had sex with … Postoak on the night of the party, the jury would have had a reasonable doubt regarding Sorum's guilt." <u>See</u> Docket Entry 8 at CM/ECF 45.

IV. <u>RECOMMENDATION</u>. For the foregoing reasons, it is recommended that Sorum's petition be dismissed, all requested relief be denied, and judgment be entered for Payne. In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, a certificate of appealability should also be denied. The undersigned is not persuaded that Sorum can make a "substantial showing of the denial of a constitutional right." <u>See</u> 28 U.S.C. 2253(c)(2).

DATED this 14th day of January, 2021.

_____
UNITED STATES MAGISTRATE JUDGE