## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**JERAN SORUM**
**ADC #163713**                                                                                              **PETITIONER**

v.                              Case No. 4:20-cv-00547 KGB-PSH

**DEXTER PAYNE**                                                                                       **RESPONDENT**

## ORDER

Before the Court are the Findings and Recommendation ("Recommendation") submitted by United States Magistrate Judge Patricia S. Harris (Dkt. No. 17). Petitioner Jeran Sorum filed objections to Judge Harris' Recommendation (Dkt. No. 18). In Mr. Sorum's objection, he restated a request for a hearing on his petition for a writ of *habeas corpus* that he first requested in his complaint (Dkt. Nos. 1, at 23; 18, at 23). Mr. Sorum renewed his request for a hearing again on October 25, 2021 (Dkt. No. 19). Respondent Dexter Payne, Director of the Arkansas Division of Correction, responded in opposition to Mr. Sorum's request for a hearing (Dkt. No. 20).

After careful consideration of the Recommendation, Mr. Sorum's objections, and a *de novo* review of the record, the Court denies Mr. Sorum's request for a hearing (Dkt. Nos. 1, at 23; 18, at 23; 19) and adopts the Recommendation as the Court's findings of fact and conclusions of law in all respects (Dkt. No. 17). The Court writes separately to address certain of Mr. Sorum's objections (Dkt. No. 18).

### I.      Procedural History

The Court recounts key aspects of this case's procedural history. The record indicates that the State of Arkansas charged Mr. Sorum with three criminal offenses: rape in violation of Arkansas Code Annotated § 5–14–103(a)(2)(C), sexual assault in the second degree in violation of Arkansas Code Annotated § 5–14–125(a)(2)(C), and computer exploitation of a child in the first

degree in violation of Arkansas Code Annotated § 5–27–605(a)(1) (Dkt. No. 17, at 2). *See also Sorum v. State*, 526 S.W.3d 50, 55–56 (Ark. Ct. App. 2017) (hereinafter *Sorum I*). A Benton County jury convicted Mr. Sorum of all three counts after seeing all evidence presented, including a video showing the conduct alleged involving Mr. Sorum and a 15-year-old minor – K.G. (Dkt. No. 17, 3–5). *Id.* at 51–54. The state trial court sentenced Mr. Sorum to an "aggregate term of twelve years in prison." *Id.* at 51. The Arkansas Court of Appeals affirmed Mr. Sorum's convictions and later denied his petition for post-conviction relief pursuant to Arkansas Rule of Criminal Procedure 37 (*Id.*). *Sorum v. State*, 582 S.W.3d 18, 27 (Ark. Ct. App. 2019) (hereinafter *Sorum II*); *Sorum I*, 526 S.W.3d at 60.

Following his unsuccessful attempts to have his sentence vacated at the state level, Mr. Sorum petitioned this Court for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, arguing that his trial court proceedings were constitutionally insufficient because he suffered from ineffective assistance of counsel (Dkt. No. 1, at 23). That petition advanced three claims: (1) "[t]rial counsel failed to make an appropriate directed verdict motion to the charge of computer exploitation of a child" (Dkt. No. 17 at 2 (quoting Dkt. No. 1 at 7)); (2) "[t]rial counsel failed with respect to accomplice corroboration by not moving for a directed verdict due to lack of corroboration, and, if that failed, then by failing to argue it to the jury with appropriate jury instructions" (*Id.* at 3 (quoting Dkt. No. 1 at 14)); and (3) "[t]he jury should have heard that K.G. [i.e., the victim in this case] had sex with Isaac Postoak on the night of the alleged offense[s]. . . " and trial counsel should have moved to introduce such evidence (*Id.* at 3 (quoting Dkt. No. 1 at 17)). Judge Harris found that Mr. Sorum's claims "warrant[ed] no relief" (*Id.,* at 18, 26). Having reviewed the Recommendation, all objections, and the record *de novo*, this Court agrees.

## II.     Objections

In his objections, Mr. Sorum argues that Judge Harris made a "critical error" by failing to "address all parts of [his] argument[s]" (Dkt. No. 18, at 1).  Mr. Sorum claims that Judge Harris "pick[ed] parts of Sorum's complaint to the exclusion of his entire argument" (*Id.*).

Federal law requires this Court to accord deference to state law adjudication on the merits, save two exceptions.  *See generally*  28 U.S.C. § 2254 *et seq.*  The Court will not defer to state court adjudication when:  (1) the decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) when clear and convincing evidence indicates that the adjudication was based on an unreasonable determination of the facts in the light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d); *White v. Dingle*, 757 F.3d 750, 755–56 (8th Cir. 2014) (explaining that "'an unreasonable determination of the facts in light of the evidence presented in state court proceedings' occurs 'only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record.'").  Moreover, challenges to counsel's representation, such as those made by Mr. Sorum, require a petitioner to show that trial counsel's performance was:  (1) deficient and (2) prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Having reviewed the record *de novo*, the Court adopts the Recommendation.  Here, the Court recounts certain of Mr. Sorum's objections and determines that his objections lack merit.[1]

---

[1]   The Court notes, as the Recommendation did, that Mr. Sorum's challenge to his trial counsel's failure to move for directed verdict related to the accomplice corroboration requirements or request a hearing regarding K.G.'s sexual contact during the night in question are likely procedurally barred (Dkt. No. 17, at 19).   However, this Court concludes, as did the Recommendation, that, even though the claims are likely procedurally barred, these challenges are more easily resolved by determining that on the merits Mr. Sorum did not suffer ineffective assistance of counsel (*Id.*).  *See generally Barrett v. Acevedo,* 169 F.3d 1155, 1162 (8th Cir. 1999)

### A.     Computer Exploitation Of A Minor

The jury convicted Mr. Sorum of computer exploitation of a child in the first degree (Dkt. No. 17, at 2). To be convicted of computer exploitation of a child in the first degree, a "person causes or permits a child to engage in sexually explicit conduct and knows, has reason to know, or intends that the prohibited conduct may be photographed, filmed, reproduced, reconstructed in any manner, including on the Internet, or part of an exhibition or performance." *Sorum I*, 526 S.W.3d, at 56 (quoting Ark. Code Ann. § 5–27–605(a)). "'Sexually explicit conduct' means actual or simulated sexual intercourse or deviate sexual activity, among other things." *Id.* (quoting Ark. Code Ann. § 5–27–601(15)). "'Deviate sexual activity' means any act involving the penetration, however slight, of the labia majora or anus of a person by any body member or foreign instrument manipulated by another person." *Id.* (quoting Ark. Code Ann. § 5–27–601(7)(B)). Mr. Sorum maintains this conviction should be voided because "the State failed to prove Sorum knew or had reasons to know the conduct would be filmed" (Dkt. No. 18, at 2). Mr. Sorum argues that the Recommendation "made factual and legal failures" because: (1) the state "failed to provide sufficient evidence that the content on the video recording [was] 'sexually explicit conduct'" and (2) his trial counsel failed to move properly for directed verdict (*Id.*, at 2–12). The Court addresses each of these arguments and determines that Mr. Sorum's arguments warrant no relief.

#### 1.     Evidence To Convict For Computer Exploitation Of A Minor

Mr. Sorum's first argument is a factual one. He claims that the state failed to "provide sufficient evidence that the content on the video recording [showing him manipulating a

---

(explaining that "[a]lthough the procedural bar issue should ordinarily be resolved first, judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated."); *Chambers v. Bowersox*, 157 F.3d 560, 564 (8th Cir. 1998)(explaining that "[t]he simplest way to decide a case is often the best.").

broomstick to touch K.G.'s pubic region and anal area was] . . . 'sexually explicit conduct'" (Dkt. No. 18, at 2). In order to succeed on his claim, he must show that his conviction was: (1) contrary to or involving an unreasonable application of clearly established federal law or (2) based on an unreasonable determination of the facts in the light of the evidence presented. 28 U.S.C. § 2254(d).

Mr. Sorum urges the Court to watch the video that led to Mr. Sorum's computer exploitation of a child conviction (Dkt. No. 18 at 3). The Court has done so. Mr. Sorum argues that a fair viewing of that video demonstrates that the state failed to prove that video showed "sexually explicit conduct" (*Id.*, at 2). Arkansas Code Annotated § 5-27-601(15) defines "sexually explicit conduct" as actual or simulated sexual intercourse, deviate sexual activity, bestiality, masturbation, sadomasochistic abuse for the purpose of sexual stimulation, or lewd exhibition of either the genital area or the breast of a female.

Mr. Sorum's computer crimes conviction turned on whether the state could prove that his alleged placement of a broomstick in K.G.'s pubic and anal area constituted "deviate sexual activity" that would rise to the level of "sexually explicit conduct" contemplated by Arkansas Code Annotated § 5-27-601(15). As discussed above, "deviate sexual activity" means any act involving the penetration, however slight, of the labia majora or anus of a person by any body member or foreign instrument manipulated by another person. Ark. Code Ann. § 5–27–601(7)(B). Mr. Sorum maintains that the state did not show actual or simulated "sexually explicit conduct" because the video shows no actual or simulated nudity or penetration that would "give a reasonable impression that the conduct actually occurred" (*Id.*, at 2–6).

### a.  Actual Sexually Explicit Content

Mr. Sorum states that the video at issue does not show actual "nudity or penetration" (*Id.*, at 3).  He argues that "[i]t is demonstrably false that actual penetration occurred," chiding the Arkansas Court of Appeals and the Recommendation for maintaining that it is for the jury to determine if actual penetration occurred (*Id.*).  Mr. Sorum points to the state's response to his motion for directed verdict and the state's closing argument for proof that no one ever argued that actual penetration occurred (*Id.*, at 3–4).

The state argued in response to Mr. Sorum's directed verdict motion that the state was not required to show actual sexually explicit conduct, that the state only had to show "simulating penetration of [the victim's] vagina and . . . anus" (*Id.*, at 4).  At close, the state argued that it did not "have to prove . . . [actual] penetration" to convict Mr. Sorum (*Id.*, at 3–4).  Mr. Sorum takes issue with the Arkansas Court of Appeals and the Recommendation's deference to the jury as to whether the video showed actual penetration (*Id.*, at 3).

In a *habeas* context, such deference is required.  Whether actual or simulated deviate sexual activity occurred is a factual question for the jury.  *See generally Groomes v. State*, 586 S.W.3d 196, 200 (Ark. Ct. App. 2019) (noting that determining if an image constitutes a "lewd exhibition" pursuant to Arkansas Code Annotated § 5-27-601(15) is a factual question for the jury).  In *Sorum II*, the Arkansas Court of Appeals correctly pointed out that "it is the jury's duty to weigh the evidence and resolve contradictions and conflicts in testimony; in doing so, the jury may accept testimony it believes to be true and disregard testimony it believes is false."  582 S.W.3d at 25.  The factual determinations in state court were not unreasonable, as Mr. Sorum argues, because, as the Recommendation points out, they were made weighing the video in question and the testimony of several witnesses (Dkt. Nos. 8-3, at 771–72, 775–76; 17, at 17–18).

### b. Simulated Sexually Explicit Content

Mr. Sorum also maintains that "[t]he Recommendation failed to properly contextualize . . . [applicable] case law" when concluding that the state court's determinations regarding simulated sexually explicit content were reasonable (Dkt. No. 18, at 6). Mr. Sorum cites a federal Supreme Court decision and decisions from the Eleventh and Fourth Circuits to buttress his argument. *See generally United States v. Williams*, 553 U.S. 285, (2008) (noting that "'simulated' sexual intercourse is not sexual intercourse that is merely suggested, but rather sexual intercourse that is explicitly portrayed, even though (through camera tricks or otherwise) it may not actually have occurred. The portrayal must cause a reasonable viewer to believe that the actors actually engaged in conduct on camera."); *Tilton v. Playboy Ent. Grp., Inc.*, 554 F.3d 1371, 1374 (11th Cir. 2009) (noting that simulated conduct defined in a federal statute "must have created the realistic impression of an actual sex act to constitute simulated sexual intercourse."); *Giovani Carandola, Ltd. v. Fox*, 470 F.3d 1074, 1077 (4th Cir. 2006) (determining that "[a]n act only constitutes simulated sexual intercourse or simulated masturbation if it creates the realistic impression of an actual sexual act."). Specifically, Mr. Sorum contends that simulated conduct in the context of Arkansas Code Annotated § 5-27-601(15) must "give a reasonable impression that the conduct actually occurred" (*Id.*, at 4–5). Mr. Sorum finds fault in his conviction because the jury was not given the legal definition of "simulated" as defined by his cited case law (Dkt. Nos. 8-3, at 965 (transcript of the trial Judge reading the jury instructions); 17, at 16).

The Recommendation did not miss the mark. Mr. Sorum's case law is factually dissimilar, inapplicable, and not controlling in this context.[2] The charge was submitted to the jury on "deviate

---

[2] The statute at issue in *Williams*, 18 U.S.C. § 2252A(a)(3)(B), criminalized, in certain specified circumstances, pandering or solicitation of child pornography. The *Tilton* court defined sexually explicit conduct in the context of 18 U.S.C. § 2251(a), a statute that prohibits the sexual

sexual activity," not sexual intercourse (Dkt. No. 17, at 16).  Thus, Mr. Sorum's Arkansas conviction does not contravene federal law as defined by the federal Supreme Court.  *See generally* 28 U.S.C. § 2254(d)(1).  Furthermore, assuming *arguendo* that Mr. Sorum's legal definition of "simulated" is the proper definition, the Court still concludes that the factual determinations made at trial and on appeal were not unreasonable.  28 U.S.C. § 2254(d)(2).  The jury saw the video, weighed the testimony of witnesses, and convicted Mr. Sorum based on that evidence.

### c. Conclusion: Computer Exploitation Of Minor

After considering Mr. Sorum's objections and the record *de novo*, the Court concludes, as the Recommendation did, that the state court did not apply a rule different from governing law, decide the case differently than the Supreme Court has done on a set of materially indistinguishable facts, or correctly identify the governing law but unreasonably apply it to these facts (Dkt. No. 17, at 18).  Also this is not an instance in which the state adjudication resulted in a decision that was based on an unreasonable determination of the facts in the light of the evidence presented (*Id.*). The Court declines to grant the relief requested on this claim.

### 2. Moving For Directed Verdict On Knowledge Of Filming The Allegedly Sexually Explicit Act

Mr. Sorum maintains that he did not know Andrew Wall filmed him pushing a broomstick onto K.G.'s pubic and anal regions (Dkt. No. 18, at 7).  Mr. Sorum maintains he was prejudiced by his trial counsel's failure to move for directed verdict challenging Mr. Sorum's knowledge that Mr. Wall was filming the events (*Id.*).  Mr. Sorum's trial counsel moved for directed verdict on the issue of penetration related to the charge of computer exploitation of a minor (Dkt. No. 8-3, at

---

exportation of children.  554 F.3d at 1375–76.  Lastly, *Fox*, explored, in a First Amendment overbreadth challenge to a state law, the definition of "simulate" and whether it was "sufficiently precise to notify persons of ordinary intelligence of the conduct prohibited by a statute and to prevent the risk of arbitrary or discriminatory enforcement."  470 F.3d at 1080.

831–33). However, Mr. Sorum maintains that directed verdict would have been granted had his trial counsel pointed the state trial court to Mr. Wall's testimony where Mr. Wall indicated that he did not know his phone was filming the incident at issue (Dkt. No. 18, at 8–9). Mr. Sorum argues that "there is no factual evidence that Wall or Sorum . . . had any knowledge that the conduct was being filmed" (*Id.*, at 11). Mr. Sorum further argues that Mr. Wall's testimony admitting that the filming took place was offered for impeachment purposes only (*Id.*).

Mr. Sorum's arguments fail for several reasons. Trial counsel is strongly presumed to have performed effectively. *Burt v. Titlow*, 571 U.S. 12, 13 (2013). Mr. Sorum has the burden of "proving that his lawyer's performance was unreasonable under prevailing professional standards, and that his lawyer's actions were not valid trial strategy." *Thai v. Mapes*, 412 F.3d 970, 978–79 (8th Cir. 2005) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986)). Mr. Sorum has not made sufficient showing of his counsel's ineffective assistance because several witnesses during the prosecution's case-in-chief testified to Mr. Sorum bragging about the video (*See generally* Dkt. Nos. 8-3, at 117, 186–87, 659, 726, 73; 8-7, at 119; 8-8, at 38, 40).[3] It is conceivable that, as trial strategy, Mr. Sorum's trial counsel did not move for directed verdict because of this testimony.

Assuming *arguendo* that Mr. Sorum's trial counsel did not perform effectively, Mr. Sorum has not shown that he was prejudiced. Mr. Sorum's argument that he was prejudiced ignores other evidence that, if credited by the jury, tends to show that Mr. Sorum was, in fact, aware the phone was recording. Like the jury, the Court reviewed the video. It is the jury's duty to weigh the evidence and resolve contradictions and conflicts in testimony; in doing so, the jury may accept

---

[3] Mr. Sorum explains in a footnote that "the Recommendation incorrectly states that it can rely on evidence after the State's case-in-chief[,]" while simultaneously stating that the Recommendation "does not appear to rely on any evidence after the State's case-in-chief . . . ." (Dkt. No. 18, at 7 n.1). Mr. Sorum's point here does not change the outcome of this case, and the testimony of the three men referenced in *Sorum I* took place during the prosecution's case-in-chief.

9

testimony it believes to be true and disregard testimony it believes is false. *Sorum II*, 582 S.W.3d at 25. As the Arkansas Court of Appeals recounted of the evidence presented at trial:

> Three young men testified about the day after King's party when they were smoking K2 in Postoak's garage. Manuel Crus, who had attended King's party, recalled Sorum saying, "Remember last night? We were all drinking. We were all messed up. I have this video." Crus testified that, while watching the video, "[t]he words out of Jerran's mouth were that he fucked [K.G.] with a broomstick. No mistake about that. I remember it clearly." Brenden Hyde testified that Sorum was "excited" about showing them the video and said that he had "screwed" or "fucked" a girl with a broomstick. Jeremiah Knifechief testified that Sorum had pulled out his cell phone, showed them a video, and said something to the effect of "screwing a girl with a broomstick."

*Sorum I*, 526 S.W.3d at 53.

Mr. Sorum has not adequately demonstrated that he is entitled to the requested relief because he has not shown his counsel was ineffective. *Strickland* 466 U.S. at 687. He also has not shown that his state court adjudication was contrary to, or involved an unreasonable application of, clearly established federal law or that his conviction was based on an unreasonable determination of the facts in the light of the evidence presented. 28 U.S.C. § 2254(d). The Court denies the requested relief as to Mr. Sorum's trial counsel's failure to move for directed verdict and adopts the Recommendation as this Court's findings in all respects.

### B. Accomplice Corroboration

Mr. Sorum asserts a second basis for his objection—what he describes as the lack of accomplice corroboration to the rape charge (Dkt. No. 18, at 12). Mr. Sorum characterizes the Recommendation's analysis as "legally and factually flawed" (*Id.*, at 13). Mr. Sorum argues that trial counsel was ineffective for failing to move for directed verdict "on the grounds that the evidence [devoid of Mr. Wall's testimony] was insufficient on the rape charge to corroborate the accomplice's testimony" (*Id.*, at 13–15). Mr. Sorum also maintains that his trial counsel was ineffective for not arguing the accomplice corroboration issue to the jury (*Id.*, at 15).

> As the Recommendation explains:
>
> [t]he test for corroborating evidence is whether, if the testimony of the accomplice were totally eliminated from the case, the other evidence independently establishes the crime and tends to connect the accused with its commission . . . . The corroborating evidence may be circumstantial so long as it is substantial; evidence that merely raises a suspicion of guilt is insufficient to corroborate an accomplice's testimony . . . . The presence of an accused in proximity of a crime, opportunity, and association with a person involved in the crime are relevant facts in determining the connection of an accomplice with the crime . . . . Corroborating evidence need not, however, be so substantial in and of itself to sustain a conviction . . . . Rather, it need only, independently of the testimony of the accomplice, tend in some degree to connect the defendant with the commission of the crime.

(Dkt. No. 17, at 20–21). *Willis v. State*, 546 S.W.3d 550, 552 (Ark. Ct. App. 2018). Mr. Sorum argues that the Recommendation incorrectly applied this test because the Recommendation did not purge properly Mr. Wall's testimony related to the rape charge (Dkt. No. 18, at 14).

The Court disagrees. While it is true that the Recommendation begins describing Mr. Wall's testimony, the Recommendation then proceeds with the *Willis* analysis by purging Mr. Wall's testimony (Dkt. No. 17, at 22–23). It is during this analysis that the Recommendation recounts other evidence presented by the prosecution that, if credited by the jury, independently established the crime and "tend[ed] in some degree to connect Sorum to the commission of the rape" (*Id.*, at 23). The Recommendation recounted that the video shows Mr. Sorum saying of K.G. – "I want to fuck that again" (*Id.*, at 22), and cited the testimony of Mr. Sorum's friends, which place him at the scene of the crime (*Id.*, at 23). The evidence cited by the Recommendation, and evidence contained within the record which this Court has considered *de novo*, shows Mr. Sorum's proximity to the crime, demonstrates that he had the opportunity to commit the rape, and displays a connection with the victim. *Willis*, 546 S.W.3d at 552.

Given this evidence, it is conceivable that, as trial strategy, Mr. Sorum's trial counsel may have opted not to develop the accomplice corroboration theory as a strategic choice. The Supreme

11

Court has made clear that counsel's strategic decisions will seldom if ever provide the basis for an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 681. "[A]dvocacy is an art and not a science . . . ." *Id.* (explaining that our "system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment."). It is not this Court's place to overturn convictions based on calculated strategic decisions.

Assuming *arguendo* that Mr. Sorum's trial counsel did not perform effectively, Mr. Sorum has not shown that he was prejudiced. Mr. Sorum's objections argue that "[t]rial counsel's failure to raise this issue with the jury cost Sorum the opportunity for a not guilty verdict . . . ." (Dkt. No. 18, at 15). Mr. Sorum's argument that he was prejudiced ignores other evidence that, if credited by the jury, tends to show independently the crime of rape and tends to connect Mr. Sorum with its commission.

Given these considerations, Mr. Sorum has not demonstrated his counsel was ineffective and has not shown that his state court adjudication was contrary to, or involved an unreasonable application of, clearly established Federal law or that his conviction was based on an unreasonable determination of the facts in the light of the evidence presented. 28 U.S.C. § 2254(d).

Applying the *Willis* analysis, the Recommendation found that Mr. Wall's testimony was independently corroborated, as required by Arkansas law (Dkt. No. 18, at 23). This Court agrees. The Court denies the requested relief as to Mr. Sorum's trial counsel's failure to move for directed verdict and to argue the issue of accomplice corroboration to the jury. The Court adopts the Recommendation as this Court's findings in all respects.

### C. Failure To Argue Rape Shield

Mr. Sorum's final objection argues that trial counsel "failed to hold a proper rape shield hearing" (Dkt. No. 18, at 16). As the Recommendation recounts, "Sorum maintains that the jury should have heard that K.G. had sex with Postoak on the night of the incident and offers several reasons why the evidence was admissible." (Dkt. No. 17, at 25). Mr. Sorum then takes issue with the Recommendation's conclusions that Mr. Sorum's trial counsel's performance was sufficient or that Mr. Sorum was not prejudiced by his trial counsel's failure to hold a rape shield hearing (*Id.*).

The Recommendation points to several arguments that demonstrate a basis for the determination that Mr. Sorum's trial counsel's reasons could have been strategic in not seeking the introduction of K.G. and Mr. Postoak's sexual contact (*Id.*, at 25–26). Specifically, the Recommendation notes that trial counsel was not deficient in this regard because any attempt to introduce evidence regarding K.G. and Mr. Postoak's sexual contact "would have undoubtedly been rejected" (*Id.*, at 25). Furthermore, the Recommendation explains that trial counsel's performance could not have been deficient because the fact that "K.G. and Postoak had sexual contact 'does not make it more or less likely that Sorum sexually assaulted and raped K.G. with a broomstick'" (*Id.*) Lastly, the Recommendation maintains that Mr. Sorum's contentions do not "demonstrate a reasonable probability that, but for the exclusion of evidence that K.G. had sex with . . . Postoak on the night of the party, the jury would have had a reasonable doubt regarding Sorum's guilt" (*Id.*, at 26). Mr. Sorum disagrees, citing cases and arguing that the Recommendation is deficient (Dkt. No. 18, at 16–23). The Court, having considered Mr. Sorum's objections and the record *de novo*, is not persuaded.

The Recommendation determined that Mr. Sorum's trial counsel was not ineffective for

not seeking a rape shield hearing because seeking to introduce evidence regarding K.G. and Mr. Postoak would have "undoubtedly been rejected" and was of "questionable relevance" (Dkt. Nos. 17, at 25).

Mr. Sorum disagrees and points the Court to exceptions to Arkansas' rape shield law to bolster his argument. Specifically, Mr. Sorum contends that "Arkansas has already recognized that an alternative explanation for an injury is an exception to the rape-shield law," which he argues demonstrates that certain evidence could have been admitted and was, in fact, relevant (Dkt. No. 18, at 17–21). Citing *Joyner v. State*, 303 S.W.3d 54 (Ark. 2009), Mr. Sorum argues that Arkansas has recognized an exception to its rape shield law when "prior sexual conduct [is used] to prove that there was an alternate source for the victim's injury, rather than an alternate source for her sexual knowledge." *Id.* at 58. *Joyner* laid out a five-factor test to determine when past sexual conduct is admissible to prove sexual knowledge or to prove an alternative source for a victim's injury. *Id.* Specifically, a party attempting to offer such testimony must show:

> (1) that the prior act clearly occurred; (2) that the acts closely resembled those of the present case; (3) that the prior act is clearly relevant to a material issue; (4) that the evidence is necessary to the defendant's case; (5) that the probative value of the evidence outweighs its prejudicial effect.

*Id.* (quoting *State v. Townsend*, 233 S.W.3d 680, 685 (Ark. 2006)). Mr. Sorum explains that this alternative explanation for physical conditions exception is widely accepted and has served as the basis of reversing convictions in several outside jurisdictions (Dkt. No. 18, at 16–19). Mr. Sorum also maintains that the evidence his trial counsel should have sought to have admitted under the above exceptions – evidence of K.G.'s vaginal wetness, pain urinating, and her pants being pulled down – was relevant to calling into question the prosecution's theory of the case that Mr. Sorum penetrated K.G. with a broomstick (*Id.*, at 21). Mr. Sorum also points the Court to "a body of case law in Arkansas that has noted an exception to the rape shield law when the sexual contact

14

[between the victim and a third party] is close in time to the alleged offense" (*Id.*, at 19–20). Relying on these cases to bolster his argument that his trial counsel was ineffective, Mr. Sorum states that "because [the rape charge] was a very close case" he was prejudiced by his counsel's constitutionally deficient action of not requesting a rape shield hearing (*Id.*, at 22). The Court finds Mr. Sorum's arguments unpersuasive.

The Court's purpose in the instant proceeding is not to reweigh evidence. *See generally Hill v. Norris*, 96 F.3d 1085, 1088 (8th Cir. 1996). "To the contrary, [this Court] must accord 'great deference' where a state appellate court has found the evidence supporting the conviction constitutionally sufficient . . . ." *Id.* As the Court explained, this issue likely is procedurally barred, but the Court moves to examine the merits of the argument given the interests of judicial economy. *Barrett,* 169 F.3d at 1162. The cases cited by Mr. Sorum do not overcome the "'strong presumption' that counsel's attention to certain issues to the exclusion of others[, here not moving for a rape shield hearing while focusing on other issues critical to Mr. Sorum's defense,] reflects trial tactics rather than 'sheer neglect.'" *Harrington v. Richter*, 562 U.S. 86, 109 (2011). Mr. Sorum has not demonstrated that his trial counsel was ineffective and, even if he had, he has not shown prejudice. Mr. Sorum has not demonstrated a reasonable probability that, but for the exclusion of such evidence, the jury would have had a reasonable doubt about Mr. Sorum's guilt. *Strickland*, 466 U.S. at 694. This is a high bar and one that Mr. Sorum does not meet. Having reviewed the record *de novo*, the Court adopts the Recommendation (Dkt. No. 17, at 26).

### III. Conclusion

For the foregoing reasons, after careful consideration of the Recommendation, Mr. Sorum's objections, and a *de novo* review of the record, the Court adopts the Recommendation as the Court's findings of fact and conclusions of law in all respects and denies Mr. Sorum's petition

for a writ of *habeas corpus* (Dkt. Nos. 1; 17).  The Court denies Mr. Sorum's request for a hearing (Dkt. Nos. 1, at 23; 18, at 23; 19).  The Court denies the requested relief.

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, a certificate of appealability is denied.  This Court is not persuaded that Mr. Sorum can make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

It is so ordered this 30th day of September, 2022.

*Kristine G. Baker*
Kristine G. Baker
United States District Judge